Good morning, Your Honor. May it please the Court, Robert Swain for Appellant David Scaggs, and I'm joined by Mark Carlos, who is Counsel for Appellant Leonard Scaggs. We intend to split our time and hopefully reserve some of that time for rebuttal. As far as David Scaggs, it's my intention to argue the 404B issue. And specifically, it's our position that the District Court erred when it allowed admission of the Coronado robbery that occurred two days after the homicide issue without making any specific 404B analysis and without making a balancing test under 403. So do we know at this point whether the basis on which the district judge admitted it, in other words, whether it was inextricably intertwined or whether it was just a straight 404B? Is there any way of telling that from the record? There's no way to tell specifically from the record. I would infer, based on the judge's instruction, that it was admitted under 404B because there was a 404B-type instruction at the time that some of the evidence came in. And in final instructions, and that would be the last day of trial at page 953, there was a specific and complete 404B instruction. And if I understand your brief correctly, you don't dispute that that evidence is probative on the issue of intent? Well, we do dispute that that evidence is. Well, your reply certainly indicates otherwise. Well, that was my error because I didn't mean to concede that we felt that it was probative on intent. But what you say is, while it can bear on intent, the district court didn't do a balancing test. And I got the impression that that's what you thought the real error was. Well, we do believe that it was extremely prejudicial and that it was a 403 balancing test error. Okay. So can you explain to me why you think it's prejudicial? Because there's nothing unduly inflammatory in this case about yet another robbery. So the fact that there was a robbery that happened a couple days later, as well as two attempts right before the Smith robbery and the Smith robbery, can't have inflamed the jury in any way. And the gun is plainly relevant. And while it's prejudicial, it's not improperly so. I understand. But the gun could have been introduced, the facts surrounding the seizure of the gun could have been introduced without the testimony regarding the Coronado robbery. True enough. But I come back then to why evidence of another robbery is prejudicial. I mean, it's just one ‑‑ there already were two tries, and the third successful one, and this one is the fourth one. And it's sort of like so what. Well, we believe so what because that type of evidence was pervasive throughout the trial, and it was powerful against Mr. Skaggs. It was pervasive because every single day of the trial, something relating to the Coronado robbery was introduced into evidence or discussed by counsel. I guess what troubles me is the fact that the same gun that was used to kill Mark Smith was used in the Coronado Hotel murder robbery. And so that's a pretty close link in terms of several aspects of 404. Well, the Coronado robbery was not ‑‑ there was no murder involved. I thought he was shot and then ultimately died. That's Smith. That's Smith. That's Smith on January 16th. Sorry. On January 18th in the evening was the Coronado robbery. But it was the same gun that was found in the car in the backseat where your client was sitting. Correct. Okay. It was the same gun. But the jury was invited to use the evidence as propensity and character evidence, starting with the government's opening statement where they argued that this was a crime spree throughout the weekend. Let me ask Judge Reimer's question a little bit different way. So what you had here is you had his confession, which was pretty damning. You had the evidence of the prior attempted robberies. You had the testimony of the flippers, the cooperators putting him at the scene. Whether you think about this as a 403 bouncing or whether you think about it as a harmless error analysis, what did this one more thing add that tipped the scales? Well, I think what it added was the fact that character evidence is particularly prejudicial and because it was so pervasive. First day of trial, it was the Coronado police officer. Second day of trial, the other Coronado police officer. The next day of trial was Overton discussing the testifying about the Coronado robbery. The next day it was Officer Marquez talking about the portion of the confession relating to the Coronado robbery. And so the probative value was slight. Well, Marquez mostly talked about the confession to the Smith killing, right? Correct. I mean, the Coronado robbery was not the focus of his testimony. It wasn't the focus, but it was brought up and was continually brought up. And the Court has recognized that when the probative value of the evidence is slight, there's more reason that it's prejudicial and the Court should be more cautious with allowing its admission. And our contention is that it did not show identity or intent for the January 16th robbery. The fact that a robbery and murder, that there was a Sunday night robbery. There were no facts that were that similar to it or otherwise probative to a particular issue of fact. And, of course, it's the government's burden to show the exact factual hypothesis to what it proves is something at issue. And with that, I'd like to pass to co-counsel, unless the Court has any other questions. Truly. Surely. Thank you, Mr. Swain. Mr. Carlos. Good morning. May it please the Court. I am Mark Carlos and I represent Mr. Linda Skaggs. I was also his trial counsel in this particular matter. I would like to discuss the pre-indictment delay and hopefully deserve some time also at the end of my discussion with you. You're not going to talk about the instruction, huh? Pardon? You should talk about the instruction, too. The instruction? Yeah. Okay. I'll just put this in perspective as far as the pre-indictment delay goes. I think the Court should understand. I know they can read it, but just understand that what took place took place over a period of three days. And on January 16th, we had the 1993, the murder of David Smith. January 17th, 1993, the murder of David Brown. And on January 18th, 1993, we had the Coronado robbery where a hot stop, and I don't know if the Court was able to get the substance of that particular hot stop, but it was a particularly dangerous stop by the police. They saw these individuals in the cars, these very violent individuals. They took them down, weapons drawn. They had violent people. These particular violent acts took place within, I think, about a three or four square mile radius, a very, very close place in time. The 32nd Street Naval Station is basically across the bridge from Coronado, less than, I would say, less than a mile. These descriptions all match. I mean, they're just general descriptions of the people involved. And they have a weapon. They have the weapon, the murder weapon that was used in the previous two nights. Putting aside the question of delay, though, because it's pretty clear that this case kind of fell into a hole somewhere at some point in time. So my issue about that has to do with prejudice, and I recognize it from a defense perspective. It's kind of hard to argue what it is that you couldn't have found out, but it just strikes me as pretty speculative in this case. Can you give me kind of your best case of what it was that was missing that you might have, that you would have been able to get a crack at back in, if it had been prosecuted? I understand. And having tried several murder cases in the past, I know we do a lot of investigation. The best time to investigate is within two or three weeks of the particular homicide. Sure, that's true. But what do you think it is that's missing? What we didn't get a chance to do was examine any type of crime scene analysis, any blood spatter. So what type of evidence do you think you would have found had you had that opportunity that would have helped to exonerate your clients? Two things. One, the issue as to Mr. Leonard's gags was, was he out of the car with his brother at the time that they killed the individual at the 32nd Naval Station? Well, if they had this gun within two days, they had the individual, they had the individuals, at least two individuals who were involved in the Smith murder within two days of it. I mean, the witnesses who testified or the witness who testified in trial indicated the body placements of the two individuals who were present at the time that Mr. Smith was killed. Gunshot residue would still be present on these two, even if they took showers. And the individuals who actually were present during the shooting, even if they showered and washed their hands, there would have been gunshot residue on either the shooter and certainly a person standing close to him. So you're thinking that you could have shown that David wasn't the shooter? Not David. I could have shown that Leonard's gags were present. Okay. I'm sorry. That Leonard wasn't there. He was still in the car. The whole offense was Mr. Ballantyne was outside of the car. Wait a second. So why couldn't you then have put in some, why couldn't you, because there was no contention that Leonard was the shooter, right? David was the shooter. Right. Okay. And so what were you missing as Leonard's lawyer because of the absence of the ability to do the gunshot residue testing? Because, I mean, you could have put it, why didn't you put in, for example, some sort of an expert that says, well, okay, if Leonard was standing next to the guy, he would have had gunshot residue on him, too. That would be a way of showing that you were prejudiced. Except that I'm saying he had the trial? Yeah. Or on your motion. In other words, the question is here, how do you get the prejudice beyond the speculative category? I understood, Your Honor. We couldn't get the expert. It was the placement of the individuals that we couldn't. In other words, if we had some type of gunshot residue on either the shooter or partially on the person, it could have been Mr. Ballantyne. You're missing my point. My point is this. There wasn't any contention that Leonard was the shooter. So you're not going to, you wouldn't have expected to find gunshot residue on Leonard's hands at the time. I mean, you wouldn't have wanted to find that, obviously. So in terms of how Leonard was prejudiced, then the question is, how was the absence of gunshot residue testing harmful to him? And the only way that it would be harmful to him is if the other person who was standing next to David when he shot would have gotten gunshot residue on him. Right. Who would have been close? You could have, there would have been a way of showing, of taking that out of the speculative category. You could have gotten an expert to say, okay, when two people are standing next to each other and one shoots, the gunshot residue doesn't just go on him, it goes on the other guy, too. And therefore, you say to the judge, since we weren't able to test that, I couldn't show that it wasn't my guy there. And I guess the flip side is, if the government had done their job in investigating the case, if they had the actual weapon, they had the actual assailants who were there, they could have tested them for gunshot residue, had the gunshot residue of Mr. Ballantyne, who was out of the car instead of Mr. Skaggs, Leonard Skaggs. And I guess that's the realistic view of this is that you're totally handcuffed, not able to do this type of investigation, the blood spatter, crime scene analysis, even canvassing. You couldn't canvass because these people, whoever might have been working, whoever might have been walking around that particular area at that time, there's no way of knowing 13 years later. So is there anything other than the gunshot residue? And blood spatter analysis, crime scene analysis we're looking at. So blood spatter would be kind of the same thing. Yes, Your Honor. All right. Well, now, what is your showing of the government's culpability in this pre-trial delay? A very high level of negligence. I would submit that I doubt that there was any type of intentional misconduct on the part of at least the U.S. Attorney's Office in this particular case. But I would say that there's a high, high degree of negligence in all law enforcement, both at the state level, the local level, as well as the NCIS would have been investigating this. I mean, the proximity and time of these particular, it's not like, San Diego is not like different parts of this country where murders happen every day. They're very few and far between. We have two murders within two days of each other within a mile of each other. It boggles the imagination that nobody could have put the two together, and particularly when they have a murder weapon which basically matches the shootings of both people. What agency was investigating this at that point? Was that the San Diego? Which one? Investigating these two murders. Were there two separate agencies involved? NCIS was the Smith shooting, and it wasn't at the San Diego County Sheriff's or whatever they call it. I think it was SDPD. No, SDPD did the Coronado. Coronado Police did the Coronado. Oh, okay. So were they working together? Is that part of the problem, the two agencies? It is part of the problem, but it's not like it happens in a vacuum. There's a murder that happens, all agencies are involved. There's a Coronado City murder on the other side of the bridge, and then there's the federal murder on the right. By the span of a bridge, which is probably less than a mile long. I know. I'm really familiar with that. So I'm just trying to understand. How would they know to be working if they probably weren't working together? Well, at the very least, I know that fortunately you put it in my excerpts, but there were press releases as to the homicides, which they do basically routinely. All agencies do. And once again, you have the descriptions of individuals who are matching, and actually the conduct of the Coronado hot stop was enough that it should have piqued somebody's attention. I want to ask you about the jury instruction thing. Were you able to find any federal cases, whether they were Ninth Circuit or otherwise, that talked about this issue of whether the person has to have joined the underlying felony before it actually happened in order to be found guilty of felony murder? No, Your Honor. We dealt with that, both at trial and also on appeal. It's our contention that Mr. Skaggs stayed inside the vehicle. And I think that's why the jury... And you had a jury question about that. The jury question was clear. I mean, they obviously believed that Mr. Skaggs was inside, and his only involvement was asking about the wallet. Well, at least somebody did. I mean, we don't know whether it was 1, 2, or 11. And so the issue was, if he was inside of the vehicle, and once again, if we were able to show, going back to the pre-indictment delay, that he was, in fact, in the vehicle and not outside of the vehicle. And I know you primarily relied on this California State case, but were you able to find any federal cases from any other circuits that dealt with that same kind of issue? Not that same issue. There's not that many felony murder prosecutions in federal court, obviously. Right. Right. We had to rely on the State court, which is what happened in the trial. I have a slightly different question on the same subject, and that is, once the jury note came in, the judge gave a, gave a, gave instruction, you were concerned about its original, your, yeah, you were concerned about its original formulation because it could have allowed the jury to convict without finding that he aided and abetted the robbery. The judge cured that by referring in his instruction to the aiding and abetting instruction. And there was no further apparent problem expressed about the instruction. And that instruction itself is indisputably correct. So my question is, why doesn't that sort of end any difficulty with instructions? Well, we did object to the actual evidence coming in and the way the instruction was, was, the court proposed the instruction. We objected to any instruction. And then the court gave whatever instruction was going to give it. But that's not on appeal. I mean, some other instruction. I don't even know what other instructions there were. I mean, you haven't appealed the giving of any other instruction. Right. Right. So it's just this supplemental instruction that was given to the jury. Which was originally objected to. Yeah, sure. But on the ground of the aiding and abetting. Right. Which was then, in effect, cured because the or at least apparently cured because there was no further objection when that instruction was given. As I understand it. Because he found that it was his using some type of state court analogy, he believed that the continuing action of the escape was part of, that was part of the aiding and abetting. Okay. Let me ask this upside down. You agree that instruction is correct? The instruction that the court gave. Yeah. After objection. Yeah. Under those circumstances, it would be. Yeah. However, I don't think it ends the discussion, though, because you still have to find that Mr. Skaggs was outside of the vehicle or actually assisted his brother. But that's a problem with some other instruction, not that one. Theoretically. I would submit not, Your Honor. Okay. And I'd like to reserve. Oh, surely. Thank you. May it please the court, I'm Paul Cook from the Southern District of California, the AUSA. I was one of the trial attorneys in the case below. And initially, I would like to apologize again to the court for the government's misstatement of the facts in its brief regarding Judge Houston's rulings on this 404B evidence. As we set forth in our errata, it was an inadvertent statement by the government that the court found that these were inextricably twined at this time. We acknowledge the court in determining and then actually admitting the evidence regarding the Coronado incident where the weapons were recovered from the car in which David Skaggs was riding, did not articulate basis. He did not do on the record a 403 analysis. He did not go through individual factors in the 404. But shouldn't he have? I'm sorry? Shouldn't he have done that, though, done that analysis? If he had done that analysis, Your Honor, we would not be arguing that issue today. The government would contend, however, that even a de novo review of the admissibility of that evidence, this court would find that that evidence was admissible and that there was no error in its admissibility. What was the government's argument in support of having the evidence received? The government had set forth actually originally in a motion response that this evidence should come in as being inextricably intertwined and as 404B. We took perhaps a broader view than we needed to, a belt and suspenders type of argument. I think it's clear that the judge gave cautionary instructions several times throughout the jury trial invoking the 404B specter in this case. But at the end of the trial, he even made reference to how this evidence was, in fact, intertwined with the other evidence, or all the evidence was intertwined, and went out of his way to say that the jury could not have overly relied on this evidence, that the rest of the evidence, including the direct testimony of the cooperator Overton and the confession of the defendant, was overwhelming. Well, it just argues in favor of saying it was harmless anyway. Ultimately, that would be an argument we would make. I mean, if you assume that it's okay for the gun to come in, the evidence having to do with the robbery is, in light of everything else, probably harmless. We would certainly urge that. I would say that the evidence could come in, first of all, as being inextricably intertwined, because it shows sort of a comprehensible, complete story of how the weapon is recovered, linking the weapon directly to David Skaggs, the person who fired the weapon in the murder, and killed Mark Anton Smith. Two days later, he has that same gun. So that really is part of the whole murder on 32nd Street. He didn't need the robbery to prove that he had the gun. He didn't need the robbery to prove that he had the gun two days later. Now, on that fact, the government really didn't go into the robbery. We have always referred to this as the Coronado robbery evidence, because the stop and the seizure involved a robbery. The victim of the robbery did not testify. Olbertson testified that this other fellow, a scary Morris and David, went into the motel, came running back out, and they drove and were stopped by the police, and he described what was happening in the car at that time. The two police officers who were called, who participated in the stop and the search of the car, simply talked about those facts, how they stopped the car, searched the car, identified David Skaggs as being in the backseat, finding the .32 caliber pistol on the floor in the backseat near where he was, and actually talked about recovering some other items, including a second gun. The victim never testified as to the facts of the robbery. I think this kind of goes to the harmless error discussion, but really the thrust of this testimony was the stop and arrest of these fellows and the recovery of the weapon and linking that weapon directly to David Skaggs. So you're saying there wasn't any evidence put in about the robbery itself? No, Your Honor. Outbounding events, in other words. Yes. I mean, the police said we were responding to a call of a robbery, and I think there was even testimony that at one point the victim was brought to the scene and identified two of the individuals. Okay, so how does that not amount to putting in evidence of the robbery? We responded to evidence of the robbery, and then we had the victim ID the people. The victim didn't go into any details. There was no testimony as to what occurred inside the motel that would be prejudicial to the defendant. I think if we're going to do a 404B analysis, one of the factors is, is this other act evidence? Is there sufficient reason to believe that this other act evidence was engaged in by, in this case, David Skaggs? That's not really the issue. I mean, that's – Well – I'm not sure that's really the issue that's raised by the defendant. No, I don't think it is. But I think that's an issue that could be considered by the court. But all that was was sort of a side note that the victim came by, they were identified, we therefore placed them under arrest, searched the vehicle at that point. So, again, it was sort of a footnote to this entire case. What do you say about counsel's argument that this was sort of this constant drumbeat of this thing coming in day after day? Was it really that big of a deal in terms of the overall context of the trial? No, Your Honor. I was kind of thinking we were really trying to corn out a robbery. But it was not the constant drumbeat. Two witnesses were called that were involved in the recovery of that weapon. I mean, the government needed us to present a comprehensive story. We have to say how we recovered that weapon. Those two officers talked about that and what they recovered on that night. There was not any drumbeat about the robbery from those officers. It's a logical progression of the evidence the government had to put in. We had to introduce that weapon to show that it matched up with a weapon that Donnie Lane, the fellow who purchased the weapon, it was the same weapon he had purchased that gave it to David Skaggs. We had to show the admissibility and the seizure of that weapon in order to connect the ballistics testimony. That that was the same weapon that was used to kill Mark Anton Smith. So that really was part of the government's case, not a drumbeat about a robbery. Well, that transitions for me into this pretrial delay argument. What took the government so long to do that? I mean, it's, you know, the two back-to-back robberies, the gun was recovered. Why did it take 13 years? Your Honor, at that time, no one had confessed to that other robbery. They had a gun that was found on this individual, David Skaggs, in that car, that was ultimately connected to that shooting. That's all at that point. Were they prosecuted on the Coronado robbery? Yes, ma'am. They were. So when did that prosecution take place? That took place right after the occurrence of that robbery. Okay. So they were prosecuted right then and there on that one. And then I assume they spent some time incarcerated. And then, I mean, what happened that took so long for the two things to be connected up? I can't explain what took the police so long to put this together, other than they did not have any eyewitness testimony as to who was involved in the 32nd Street, who positively identified any of the individuals that were eventually charged. All they had is a weapon that was used in that that was connected to David Skaggs. The government argues that it needed the confession in order to go forward. And why? I mean, doesn't the government prosecute without confessions? It does, Your Honor. But until someone confessed, we had no eyewitness that could say David Skaggs was present at the scene. David Skaggs had the pistol. David Skaggs was the shooter. There was no one that could testify to that. That's what basically took so long. But I think that analysis actually isn't one that we reach, since I don't think there was any showing that there was actual prejudice by this delay. So what about the gunshot residue argument that was made? Well, I think the two issues they raised is the gunshot and the blood spatter. Let me address the blood spatter first. There were photographs of the crime scene. That's what pretty much everybody always has in every murder case. Everybody had that. Everybody had the gun. The clothing that David Skaggs was wearing two days later obviously was seized. There was discussion about jackets and other items that were recovered. Leonard Skaggs and Ballantyne were not arrested. They had not been identified as participants in that. There was nothing to compare of theirs to show the absence or presence of gunshot residue. The only person who they had in custody who might have gunshot residue was David Skaggs, who everybody acknowledges and he admitted himself was the shooter. So there actually was no testimony at all, and there couldn't have been. So basically what you're saying is there wasn't anything to connect Leonard at that point, and therefore who would have even thought about doing a gunshot residue test on him? That's correct. I mean, if anyone could have been charged, perhaps David Skaggs simply and maybe Overton because they were in a car and there was the gun that was used. But that's hardly sufficient. So we really don't reach that. As to blood spatter, in the photographs there was never any discussion, testimony, trial, that there was in fact any blood spatter. I mean, this was done on the outside. We're not talking about a wall behind it where you'd see blood all over the wall. That's correct. It was in a parking lot and the body was lying on the ground. The problem with the blood spatter argument is no one, well, I don't know blood spatter could be compared to what? Since, again, we did not have anything from Leonard Skaggs that you could show an absence or presence of blood spatter, and the same goes for Ballantyne. But, again, there was no evidence. The crime scene technicians were there, testified at trial. The photos are there. And there was never any discussion in the court below of the blood spatter. If I may turn to the instruction that seemed to be the other issue that I think the simple answer to the question, and Your Honor honed in on that, is was this a proper instruction? And I think that ought to end the Court's inquiry. It was a proper instruction. It was not an instruction that was sought by the parties as part of the concluding instructions. It was in response to the jury's specific question. I don't think there's any question by anyone that, in fact, it states the law correctly and was a proper response to that question. What counsel wants to do is go behind that instruction and speculate as to what the jury was thinking or what they might have found based solely on that instruction. And as Your Honor already pointed out, the Court, at the same time of giving that instruction, referred again to the aiding and abetting instruction so that that would be read in context and not be taken out of context. You still had to evaluate this from an aiding and abetting theory. There was no evidence presented, and counsel points to none, other than the claim that Leonard Skaggs said he never got out of the car. There was a lot of testimony that showed that he was involved in this robbery spree. It came primarily from Overton, who described all four of them talking about committing a robbery, described all four of them attempting those two other robberies in downtown San Diego before they went to 32nd Street, of all four of them getting out of the car and staking out the ATM machine. That was corroborated to some degree by the eyewitnesses who were there at the time in 1993 who recalled, and I believe it was either three or four or at least more than two, that there were several individuals they saw get out of the car and be around that ATM machine. So there is that corroboration. In his own statement, Leonard Skaggs admits that earlier that evening they had talked about committing robberies. He admitted that the intent in going to 32nd Street was to rob someone. So there is no evidence to support he was a merely present passenger in the backseat of the car who woke up after all this happened. But there was his statement that came in. You're saying there's no evidence other than his statement. Yes, other than his statement. The jury was entitled to believe that, though, right? Yes. The jury could have believed the statement, or at least the jurors who were asking the question could have believed the statement. But even by his statement, he doesn't say, I didn't know anything was going on until the very end. In fact, he, when he hears, he says, he hears the gunshot, indicates, according to Marquez's testimony, let's go, and they drive over to where the actual robbery and killing was taking place. I want you to back up a little bit to the notion that the instruction was correct. In other words, the supplemental instruction that the judge gave where he said the crime or robbery continues beyond the immediate scene, et cetera, et cetera. What you're saying is that that instruction considered in and of itself is a correct statement of the law of robbery. Yes. Is that what you're saying? Yes. Okay. But this wasn't a robbery case. This was a felony murder case. And so that instruction essentially gets plugged into an instruction about felony murder, instruction 18 or whatever it was. Is that instruction combined with the instruction about felony murder, which was the context in which the judge gave it, is it a correct description of the law of felony murder? So, for example, if I'm in a car with you and you get out and you go into a store and knock it over and shoot somebody, and you come out, and let's just say hypothetically that I didn't know that's what you were going to do, and you come back out in the car and say, I just knocked over the store and shot somebody, and I drive the car away with you in it, am I guilty of felony murder? I think there's an argument that you would make that you're merely present. And that's really a factual question for the jury to decide from all the surrounding evidence in this case. And as I just set forth, there was an enormous amount of evidence to show that he was not just merely present. I understand. Now you're talking to me about the sufficiency of evidence. I want you to answer the question I asked. In that scenario, is the person guilty of felony murder? Not necessarily. Okay. And I think you could infer from the Dayton case. Where's the hedge? Under what circumstances would he be guilty? Under what circumstances wouldn't he be guilty? I think if you are an aider and abetter to the robbery. If you are a knowing participant in the robbery, as the robbery takes place before the robbery takes place, that you are clearly liable under the felony murder. Okay. So if I'm standing outside the store and I'm not with the person, and I look in the store and I see somebody shoot and kill somebody and run out with a bunch of money, and he comes out and says, I don't have any way to get out of here, and I give him bus fare, am I guilty of felony murder? No, because I don't think you're guilty of the robbery. Okay. So wasn't the jury entitled in this case, and I understand your point that there was a mountain of evidence that goes the other way, but wasn't the jury entitled to believe Leonard's story that the government put into evidence that he had given to the police, which is that I'm along, I'm just there, these people get out of the car, I don't know what they're doing, I hear a shot, they come back, and they say, let's get out of here, and we go off. Wasn't the jury entitled to believe that? They could believe that, but that's not all he said in his statement. He, in his statement, also said that we had gone there with the intent to rob, that that was why we all went to the base, with the intent to rob. He was a participant in the robbery before they even got there. So by his own statement, you can't parse out the... Okay. So basically you're saying there is no scenario under which the jury could have believed the proposition that Leonard had nothing to do with and didn't know about the robbery before it happened. I would say so. Or while it was happening. Yes, Your Honor. Okay. Then why did they ask the question? I have no idea, Your Honor, and that's what we're getting into, the speculation of what drives that. I know. Well, I agree with you. There's evidence from Leonard that they set out with the purpose of robbing the ATM. But then the jury seemed to be... I mean, if they disbelieved that and had no questions about it, why would they ask the jury a question about does robbery continue through the escape if they were not also thinking that he was just part of the escape? I don't know that we can properly infer what they were thinking and speculate what generated that question from which or what number of jurors. Right. We just don't know. Of course we don't know. But I'm saying so we have that evidence, then we have this question that comes out that obviously represents somebody thinking that they might tend to believe the other evidence. And if the jury instruction read together with aiding and abetting is confusing, even though on its own as a instruction concerning the law of robbery, it's fine. But if it's confusing and incorrect when you're trying to talk about felony robbery, isn't that an error? I don't think it is confusing, Your Honor. And I certainly... Well, I said if it is, if it does create a confusion, wouldn't that be error? I don't think the judge created confusion by that instruction. He gave a proper statement of the law. I'm saying if he did create confusion, would that be error? If there's... Do I have to repeat this question six times? If there is error in giving that instruction... No, no. If there is error. Okay. Okay. So you're answering my question that, yes, it's error, but it's harmless. It could be error, and yes, and it would be harmless error. Okay. You know, you can't you're allowed to concede some things. You're allowed to... I don't understand. I don't even understand what you're... I don't want to concede that. I don't understand what you're answering even. I mean, what's confusing about it? Well, I'm suggesting it could be confusing. Yeah, I understand. But I'm asking counsel, when you're responding to the question, what do you understand confusion to mean? I don't concede that there was confusion by that jury response, that question, and coupling it with the aiding and abetting. However, in answer to... It's undercutting... ...Constitutional Court Law's question, I mean, if there was some confusion created by the court in a hypothetical situation... I don't think it underlined the felony murder instruction, which they were supposed to be abiding by, by not giving a full explanation. I don't think it underlined the felony murder... Okay. But I'm not asking you if it did. If it did, Your Honor. If under these facts, that is... Yeah. I'm trying to get to this. ...they undermined that, at best, it would be harmless error. Okay. I think the Court even acknowledged that in denying the post-verdict motions, as I indicated before, that the jury could not have been overly persuaded by that in the face of all the other overwhelming evidence against Leonard Skaggs and his participation in this robbery homicide. So the Court even addressed that issue and acknowledged that... I was trying to get your harmless error argument out on the table. And that would be the harmless error, that that was such a small portion of the overwhelming evidence against Leonard Skaggs' active participation in the robbery and his liability for felony murder, that if that created confusion and was error, it was harmless error because it was such a small part of that. If the government's theory... I say I'm out of time, but the government's theory all along was that Leonard Skaggs actually was the second person who got out of the car, and that was Overton's testimony. However, under felony murder, it doesn't matter whether he was the getaway driver, waited in the car as a lookout, or actually went with David Skaggs at the shooter. So long as he was aware that it was going on. Yes. Okay. Thank you. Okay. Thank you, Mr. Cook. Mr. Swing. Thank you, Your Honor. The only point I'd like to make is it seems unfair for the government now to suggest that the Coronado robbery was so insignificant and insubstantial in the evidence when it was brought up as specifically referenced in the opening statement as part of the crime spree and then mentioned by some witness in every single day of the trial. And it's because it had little probative value, it was prejudicial. Okay. Thank you. Mr. Charles. Just briefly, I'd like to address some of the comments that Mr. Cook made. The Coronado robbery, the arrest happened, once again, just two days after the initial murder. They were brought, they were arrested. They had the murder weapon. They had fingerprints on the murder weapon. They had Leonard Skaggs. They had Mr. Overton, who we all know was very quick to turn on his friends, which is what he did in this particular case. So the fact is that they could have found the individuals. They could have actually tested Mr. Overton. There's a pretty good chance Mr. Overton made a guy out of the car. Mr. Overton was the most unreliable, incredible witness that I have ever seen in 25 years of criminal defense. He told about shooting people, about robbing people, about lying, about everything. He's just a completely unreliable witness. I think that in this particular case to say that we needed confessions before we could move forward is completely ridiculous. They had a murder weapon. They had fingerprints. They had the whole panoply of the federal government fingerprint analysis. They could have easily put it through an automated fingerprint. They would have found these people. Mr. Overton was. Mr. Overton and Mr. Skaggs. In 1993, they didn't have any of that kind of stuff, even though you see it on CSI or whatever. I mean, they didn't have that automated stuff. I'm sure they had the I-Data thing. It wasn't automated. I mean, it doesn't happen like it happens on those little screens. At the very least, all of these people were in the military, so it would be pretty easy to find them. So to say that they needed that. If they knew to look in the military database, I suppose. Across the bridge from 32nd Street Naval Base and the fact that they all appear to be ex-military. Finally, just as far as the blood spatter goes, I think what's important here is they're saying that I couldn't compare it to anything, but we're talking about actually being at the scene, identifying the blood spatters, and then having somebody do an analysis based upon what's at the scene. 13 years later. You're saying the photographs weren't good enough. I mean, again, to show prejudice, you could have had an expert come in with an affidavit saying, I can't figure it out from these photographs. I needed to be there. But you didn't do that. That's how you show prejudice in these situations. I understood your point. But once again, back to my initial discussion about that. We have the only witness that has Mr. Skaggs out of the vehicle is Mr. Overton. The eyewitnesses just identified a black male. Nobody identified Mr. Leonard Skaggs. It's actually moving the vehicle. Thank you. Thank you, counsel. All of you, the matter has already been submitted and the Court will stand in recess for the day. All rise. The Court is adjourned. Thank you.
judges: Kennelly, Rymer, Wardlaw